UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR REYNOLDS; HEATHER REYNOLDS; H.R., a minor; and R.R., a minor–by and through their Guardian Ad Litem, Janice White,<br><br>          Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY; POLINSKY CHILDREN'S CENTER; MAYA BRYSON; SHARI MEDEIROS; LAURA ZETMEIR; CHERYL BERGLUND; KRISTIE CAMPBELL; and Does 3 through 50 Inclusive,<br><br>         Defendants. | Case No.:  11cv1256-JAH (AGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO STAY [DOC. NO. 162]** |

## **INTRODUCTION**

Plaintiffs Trevor Reynolds, Heather Reynolds, H.R., a minor, and R.R., also a minor, both through their guardian *ad litem*, Janice White (collectively, "Plaintiffs"), filed the instant action, alleging, *inter alia*, federal civil rights violations under the First, Fourth, and Fourteenth Amendments of the United States Constitution. *See* Doc. No. 90 at 2 (citing 42

1

U.S.C. § 1983). Defendant County of San Diego now moves to stay the entire action pending the Ninth Circuit Court of Appeals (the "Ninth Circuit") decisions in (1) *Mann v. County of San Diego*, Case No. 3:11-CV-0708-GPC (BGS) ("*Mann*"); *and* (2) the interlocutory appeal from this Court's October, 2016 order finding, *inter alia*, that qualified immunity does not bar Plaintiffs' § 1983 claim against the social worker defendants, Cheryl Berglund and Maya Bryson. *See* Doc. No. 162. Plaintiff Trevor Reynolds opposes the motion. *See* Doc. No. 163. After careful consideration of the parties' briefs, the Court deemed the matter suitable for disposition without oral argument. *See* Doc. No. 164. In light of the entire record, relevant law, and for the reasons set forth below, Defendant County of San Diego's motion to stay is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

This action arises from a juvenile dependency investigation, and subsequent proceedings, initiated, and/or conducted, by Defendants County of San Diego ("County") and the San Diego County Health and Human Services Agency ("Agency"), regarding a series of events involving Plaintiff minors H.R. (born in 2007) ("H.R."), R.R. (born in 2010) ("R.R."), and their parents, Plaintiffs Trevor Reynolds ("Trevor") and Heather Reynolds ("Heather"). *See* Doc. No. 90 at 2.

### I. Factual Background[1]

On the morning of June 9, 2010, Heather left the family home to attend a dentist appointment. She left H.R. and R.R. in the care of their father, Trevor. At the time, H.R. was two years old and R.R. was six weeks old.

---

[1] The following background facts have been taken from the parties' briefs, and this Court's prior order (1) granting in part and denying in part Defendant Bryson's motion for summary judgment or partial summary judgment; (2) granting in its entirety Defendants Medeiros and Zetmeir's motion for summary judgment; (3) granting in part and denying in part Defendant County of San Diego's motion for summary judgment; (4) granting in its entirety Plaintiffs' motion for summary judgment; and (5) granting in part and denying in part Plaintiffs' *ex parte* judicial notice requests. *See* Doc. No. 147. Unless otherwise noted, the facts herein are undisputed.

When Heather returned later that morning, she noticed that R.R. was fussy, and difficult to console. Heather took R.R. upstairs to change her diaper and noticed that R.R.'s right hip was at an odd angle. Trevor and Heather immediately took R.R. to Kaiser Permanente's Intermediate Care Services where X-rays were taken. The X-rays revealed signs of a displaced femur fracture to R.R.'s left leg. To confirm, R.R. was transported to Kaiser Zion Hospital where Dr. Richard Newton, a pediatrician, diagnosed R.R. with a completely displaced left femur fracture. Dr. Newton determined that the Reynolds parents lacked an explanation for R.R.'s injuries. Consequently, Dr. Newton caused Kaiser to report the injury as suspected child abuse to the County of San Diego Child Welfare Services. A child abuse detective with the County Sheriff was also contacted and advised of the incident.

That evening, the on-call social worker, Defendant Maya Bryson ("Bryson"), investigated the allegations of suspected child abuse after receiving an emergency response referral form stating that R.R.'s femur fracture resulted from suspected non-accidental trauma. Bryson consulted with her supervisor, Defendant Cheryl Berglund ("Berglund"), Dr. Newton, Trevor, Heather, the deputy sheriff, and the nurse who reported the matter on Dr. Newton's behalf during the investigation. Bryson noted that (1) the Reynolds parents had no specific explanation for how the injury happened; (2) Heather believed the injury occurred while she was out of the home; and (3) Trevor did not make eye contact, and seemed reluctant to answer questions. Dr. Newton could not provide Bryson any medical opinion on what caused the fracture. After Bryson discussed her findings with Berglund, Berglund decided that the County would initiate a hospital hold, placing R.R. in protective custody. Just before midnight, Heather and Trevor were escorted from the hospital where R.R. was admitted.

At 12:01 a.m. on June 10, 2010, Berglund placed a hospital hold on R.R. According to the Health & Human Services Child Welfare Service's Emergency Response Referral Information form, R.R. was due to be released from the hospital on or about June 11, 2010.

Bryson presented Heather with a consent form to authorize medical treatment of R.R. Heather signed the form.

While determining whether to take R.R. into protective custody, Bryson and Berglund also assessed whether to take similar action with H.R. At the time, H.R. was in the care of his maternal grandmother, Cathy Howland ("Howland"). Ultimately, H.R. was placed in protective custody and removed to the Polinsky Children's Center. Before doing so, Bryson and Berglund considered the severe injury to R.R., H.R.'s young age, H.R.'s inability to communicate whether he was being abused, and the possibility that the Reynolds parents could be abusers. On June 9, 2010, at 11:00 p.m., Defendant Kristie Campbell, a County social worker ("Campbell"), and two police officers went to Howland's home, in Oceanside, California, and removed H.R. from the home. Officers restrained Howland by stepping between her and Campbell. H.R. was taken into protective custody at 11:45 p.m., and checked into Polinsky Children's Center at 12:20 a.m. on June 10, 2010.

Thereafter, on June 10, 2010, Defendant Shari Medeiros, a County social worker ("Medeiros"), and her supervisor, Defendant Laura Zetmeir ("Zetmier"), were assigned to take over the case from Bryson. Medeiros continued the investigation of the child abuse allegations by interviewing Trevor, Heather, and other family members. Trevor indicated that he had no additional information to add concerning R.R.'s injury. Medeiros advised the parents that they could have supervised contact with their children.

On June 11, 2010, Medeiros obtained assistance from Dr. Marilyn Kaufhold, a child abuse expert at Rady's Children's Hospital. Dr. Kaufhold opined, "[t]he femur fracture is the result of trauma and is highly concerning for child abuse in this baby that otherwise seems to be a normal, healthy infant . . . fractures do not occur in infants as a result of normal usual child care." *See* Doc. No. 70-1 at 11. Additionally, Medeiros spoke to Trevor and Heather over the telephone. Trevor confirmed that, on the morning of June 9, 2015, Heather went upstairs to change R.R. Heather opined that H.R. caused R.R.'s injury while Trevor was asleep on the couch, possibly by stepping on R.R., who was also on the couch.

4

On June 11, 2010, Medeiros initiated and filed juvenile dependency petitions in the Juvenile Court of San Diego County. Medeiros summarized her investigation and included it as supporting documentation. A detention hearing was held on June 14, 2010. At the hearing, the Juvenile Court found that Defendants made a *prima facie* showing on the allegations contained in the petition. Specifically, the court found that detention was necessary because of the substantial risk to the children's physical health. The court also found that continued care in the Reynolds home was contrary to the children's welfare. Medeiros arranged for the children to return to their own home by June 15, 2010, under the care of their paternal grandmother.

From June to August 2010, Medeiros continued to investigate the case, as it developed in juvenile court. Medeiros contacted the parents, family members, service providers, the investigating detective, doctors, the children, and her supervisor, Laura Zetmeir. Medeiros also prepared a jurisdiction report, a disposition report, and an addendum report.

Plaintiffs allege that Medeiros submitted Trevor's name to the Child Abuse Central Index ("CACI") for a substantiated allegation of severe neglect on June 21, 2010, and was not removed from the CACI until September 22, 2010, or thereafter.

On June 30, 2010, Medeiros collected medical histories for R.R., H.R., and their parents, then furnished the histories to Dr. Kaufhold. Dr. Kaufhold reviewed the Reynolds parents' medical histories and wrote a letter indicating, "[w]hile I cannot dismiss the possibility of inflicted injury, I would recommend that [R.R.] have a genetics consult to consider the possibility of osteogenesis imperfecta ("OI," or brittle bone disease)." *See* Doc. No. 70-6 at 3. Thereafter, Dr. Nunes, a pediatrician specializing in OI examined R.R. at Kaiser Hospital. Dr. Nunes opined that R.R. more than likely suffers from OI, but the finding is only "one piece of the puzzle[,]" because it was possible that OI and abuse could be present. *See* Doc. No. 89-7 at 2.

On July 23, 2010, Heather met with Medeiros to share R.R.'s OI diagnosis. Heather advised Medeiros that she was anticipating a separate report from Dr. Nunes regarding the

5

1 likelihood of H.R. having OI as well. On July 27, 2010, Dr. Nunes provided Medeiros his report indicating that it was likely that H.R. had OI as well.

On July 28, 2010, the Juvenile Court held a settlement hearing. Medeiros contends that Dr. Nunes's findings were discussed. Plaintiffs contend Medeiros deliberately concealed this exculpatory evidence from the court. The hearing was continued until August 18, 2010. On July 30, 2010, Heather was authorized to move back into the family home to care for the children under the supervision of the two grandmothers.

On August 18, 2010, the Juvenile Court held the continued settlement hearing. Heather refused to undergo genetic testing, and the court declined to issue an order requiring her to do so. The case did not settle. However, on August 19, 2010, the Juvenile Court dismissed the action, upon the Agency's request, and both children were returned to their parents' custody.

## II. Procedural History

Plaintiffs filed the instant action on June 8, 2011, seeking monetary relief, including punitive damages, against Defendants based on eight causes of action: (1) assault; (2) battery; (3) false imprisonment; (4) violation of civil rights; (5) *Monell* related claims; (6) intentional infliction of emotional distress; (7) violation of state civil rights, pursuant to Cal. Civ. Code §43; and (8) violation of state civil rights pursuant to Cal. Civ. Code § 52.1. *See* Doc. Nos. 1, 90. Plaintiffs also seek injunctive relief against ongoing or future harm. *Id*.

Defendant Bryson's motion for summary judgment was filed on January 10, 2014. *See* Doc. No. 49. Plaintiffs filed an opposition to the motion on February 14, 2014, and Bryson filed a reply thereto on March 5, 2014. *See* Doc. Nos. 74, 95. On February 24, 2014, Plaintiffs filed an amended complaint to name Doe Defendants, Kristie Campbell and Cheryl Berglund. *See* Doc. No. 90. On November 25, 2014, Defendant Berglund filed a motion to join in Bryson's motion for summary judgment. *See* Doc. No. 131. Plaintiffs, in turn, filed a response to the notice of joinder. *See* Doc. No. 132.

//

The hearing date on all, then pending, motions was rescheduled *sua sponte* and upon request from the parties. Bryson and Berglund's motion, among others, was heard on November 24, 2014. *See* Doc. No. 130. After entertaining oral argument from counsel, the Court took all matters heard under submission. *Id*.

On April 1, 2015, Plaintiffs requested, *ex parte*, that the Court take judicial notice of certain documents filed in *Swartwood v. County of San Diego, et al.*, Case No. 3:12-CV-1665-W (BGS). *See* Doc. No. 137. Defendants filed opposition on April 7, 2015. *See* Doc. No. 138. On July 17, 2015, Plaintiffs requested, *ex parte*, that the Court take judicial notice of the Ninth Circuit's decision in *Kirkpatrick v. County of Washoe*, 792 F.3d 1184 (9th Cir. 2015), which the Court of Appeals issued on July 10, 2015. *See* Doc. No. 141. Defendants did not object.

On October 3, 2016, this Court issued an order, *inter alia*, (1) granting in part and denying in part Bryson and Berglund's motion for summary judgment or partial summary judgment; and (2) granting in part and denying in part Plaintiffs' *ex parte* judicial notice requests. *See* Doc. No. 147.

Bryson and Berglund's motion was granted with respect to the following: (a) Bryson's individualized consideration on the motion for summary judgment; (b) exigent circumstances justified R.R.'s removal from her parents, prior to judicial authorization; (c) notwithstanding the exigent circumstances, Defendants Bryson and Berglund are entitled to qualified immunity as to R.R.'s initial removal; (d) Bryson and Berglund are entitled to discretionary immunity under Cal. Gov. Code. § 820.2, as to the First, Second, Third, Sixth, Seventh, and Eighth causes of action; and (e) Bryson and Berglund did not incur punitive damages liability. *See* Doc. No. 147 at 49. The Court found that genuine issues of material fact existed as to whether H.R.'s removal from Howland's home was justified. Accordingly, the Court denied Bryson and Berglund's motion, in part, based on the following findings: (f) exigent circumstances did not justify removing H.R. from Howland's home; and (g) qualified immunity does not bar Plaintiffs' § 1983 claim against Bryson and Berglund for their decision to remove H.R. from Howland's home. *Id*.

7

On October 20, 2016, Bryson and Berglund filed an interlocutory appeal, [*see* doc. nos. 149, 150], challenging this Court's finding that qualified immunity does not bar Plaintiffs' section 1983 claim against them with respect to their decision to remove H.R. from Howland's home. The Ninth Circuit filed a scheduling order on October 21, 2016, ordering that briefing be completed, including service of the optional appellant's reply brief, no later than March 16, 2017. *See* Doc. No. 151.

On January 31, 2017, Defendant County of San Diego filed the instant motion to stay the entire case. *See* Doc. No. 162. Plaintiff Trevor Reynolds filed a response in opposition on February 27, 2017. *See* Doc. No. 163. No reply brief was filed; and, pursuant to CivLR 71.1(d), the Court took the motion to stay under submission without oral argument from the parties. *See* Doc. No. 164.

In preparation for the final pretrial conference, currently scheduled for September 25, 2017, this Court ordered the parties to file a joint statement briefing any issues requiring clarification before trial, no later than August 18, 2017. *See* Doc. No. 174. A pretrial status conference is currently scheduled for September 1, 2017. *Id.*

## **DISCUSSION**

### 1. **Legal Standard**

"A district court has discretionary power to stay proceedings in its own court under *Landis v. North American Co.*" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). "The power to stay a case is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Halliwell v. A-T Sols.*, Case No. 13:13-CV-2014-H (KSC), 2014 WL 4472724, at *7 (S.D. Cal. Sept. 10, 2014) (quoting *Landis*, 299 U.S. at 254). A district court may stay a case "pending resolution of independent proceedings which bear upon the case," even if those proceedings are not "necessarily controlling of the action before the court." *See Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979). However, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand

8

11cv1256-JAH (AGS)

aside while a litigant in another settles the rule of law that will define the rights of both." *See Landis*, 299 U.S. at 255.

In determining whether to grant a stay pursuant to *Landis*, courts in the Ninth Circuit weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *See Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

However, judicial economy and case management concerns "standing alone [are] not necessarily [ ] sufficient ground[s] to stay proceedings." *See Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007); *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) (noting that "considerations of judicial economy . . . cannot justify [ ] indefinite, and potentially lengthy stay[s]"). Further, "if there is even a fair possibility that the stay for which [the movant] prays will work damage to someone else," the movant "must make out a clear case of hardship or inequity in being required to go forward." *See Landis*, 299 U.S. at 255; *Dependable Highway Exp., Inc.*, 498 F.3d at 1066. The Ninth Circuit has instructed that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *See Lockyer*, 398 F.3d at 1112. Also, courts in the Ninth Circuit have indicated that the potential harm of delaying a plaintiff injunctive relief weighs more heavily against granting a stay than the potential harm to a plaintiff seeking only monetary relief. *See Lockyer*, 398 F.3d at 1112; *Aldapa v. Fowler Packing Co., Inc.*, Case No. 11:5-CV-00420-DAD (SAB), 2016 WL 6124216, at *1 (E.D. Cal. Oct. 20, 2016) ("[S]taying a suit seeking injunctive relief against ongoing or future harm causes a more significant hardship against a plaintiff resisting a stay than a suit for damages.").

Lastly, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims

presented to the court." *Leyva*, 593 F.2d at 864. "Generally, stays should not be indefinite in nature." *See Dependable Highway Exp., Inc.*, 498 F.3d at 1066. The Ninth Circuit has held that even a stay that terminates "upon the 'resolution of [an] appeal'" has an indefinite term because the Supreme Court could grant certiorari to review the appellate court's decision, or the appellate court could remand to the district court for further proceedings. *Yong*, 208 F.3d at 1119. Thus, a district court should give due weight to the requested length of a stay in exercising its discretionary power to stay proceedings. *See id*.

## 2. Analysis

Defendant County moves to stay this action for damages and injunctive relief pending (1) the Ninth Circuit's decision in *Mann*; *and* (2) resolution of the interlocutory appeal from this Court's October, 2016 order granting in part and denying in part Berglund and Bryson's motion for summary judgment or partial summary judgment, finding, *inter alia*, that the social worker defendants are not entitled to qualified immunity on Plaintiffs' claim that they wrongfully placed H.R. in protective custody.

Indeed, the County contends that the legal issues in *Mann*—specifically, whether the medical examinations performed on minors at Polinsky, without parental consent, violated the appellees' constitutional rights—"will likely control the outcome of this case" because "if the Ninth Circuit holds that the medical examinations are constitutional, the County will be able to bring a simple motion for summary judgment in order to resolve the Polinsky exam issue in this case." *See* Doc. No. 162 at 2. Similarly, the County argues, "if the Ninth Circuit finds Plaintiffs § 1983 claims barred by qualified immunity, the social worker defendants will prevail in this case, leaving only the Polinsky issue to be addressed. *Id*. Ultimately, the County contends that granting a stay will promote judicial economy—by simplifying issues, effectively saving time, effort, and money, that could be wasted in the event of contrary trial and appellate decisions—without causing undue prejudice on the Plaintiffs. *See id*. at 3-9 (assuring this Court that staying the case will not prejudice Plaintiff because a "delay in obtaining solely monetary damages is not a basis for denying a stay request," and that Plaintiffs only requests monetary relief (and not injunctive relief), since

the County "no longer conduct[s] [exams] without parental consent or presence, or an individualized court order.").

Plaintiff Reynolds opposes the motion, contending that the County's grounds for the stay are speculative, and otherwise fail as a matter of law. *See* Doc. No. 163 at 2-3 (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2015)). The Court disagrees, and finds that a limited, six-month stay is appropriate in this case.

*Landis* cautions that "if there is even a fair possibility that the stay . . . will work damage to someone else," the stay may be inappropriate absent a showing by the moving party of "hardship or inequity." 299 U.S. at 255. In this case, there is a "fair possibility" that the stay requested will "work damage" to Plaintiffs. While the County is correct that a decision in *Mann* is likely to at least clarify issues in this case turning on the legality of the Polinsky medical examinations, delaying the forthcoming trial, as to all Defendants, until *both* the *Mann* appeal and the appeal from this this Court's October, 2016 order issue, weighs against staying this case. *Yong*, 208 F.3d at 1119 (noting that a stay that terminated upon the resolution of an appeal could "remain in effect for a lengthy period of time, perhaps for years" if litigation dragged on). Nevertheless, the Court finds that the County establishes a sufficient case of hardship warranting a shorter stay than requested.

As the *Lockyer* court noted, "being required to defend a suit, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." 398 F.3d at 1112. Aside from postponing the inherent burden of litigation, however, the County argues that a stay will protect it from the hardship of enduring potentially inconsistent future rulings in the matters pending in the Southern District and the Ninth Circuit, respectively. *See* Doc. No. 162-1 at 5-6. The Court agrees.

Moreover, looking to each appellate docket, the Court notes that, to date, the briefing in both cases is nearly complete. *See Reynolds, et al. v. Bryson, et al.*, Case No. 16-56565; *Mann et al. v. County of San Diego et al.*, Case No: 16-56740. Specifically, both dockets indicate that briefing is scheduled to conclude on or before August 28, 2017. Therefore, in light of the appellate briefing schedules, the County's representation that it no longer

11

11cv1256-JAH (AGS)

conducts intake medical examinations without parental consent, or presence, or individualized court order [*see* doc. no. 162-1 at 9], and that H.R. and R.R. were returned to the custody of their parents [*see* doc. no. 147 at 6], the Court finds the urgency of the irreparable injury alleged in Plaintiffs' Complaint moderately reduced, and that appellate proceedings may conclude "within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864. A limited, six-month stay is proper.

## **CONCLUSION AND ORDER**

In light of the general policy favoring stays of short, or at least reasonable, duration, while also being mindful of concerns relating to "economy of time and effort for itself, for counsel, and for the litigants," *Landis*, 299 U.S. at 254, and considering that the stay requested is likely to do damage to Defendants without a sufficient showing of hardship or inequity by Plaintiff Trevor Reynolds, this Court is convinced that a limited stay is warranted at this time. Consequently, Defendant County of San Diego's motion, [doc. no. 162], is **GRANTED** as follows:

1. All proceedings in this case are **STAYED until February 12, 2018**, unless otherwise ordered by the Court;
2. The parties shall file a joint status report **no later than January 26, 2018**; and
3. A telephonic a status conference is set for **February 9, 2018, at 11:30 a.m.** Plaintiff shall initiate the phone call with the Court with all parties present.

**IT IS SO ORDERED**.

DATED: August 18, 2017

JOHN A. HOUSTON
United States District Judge